UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DUANE HALL,

                    Plaintiff,

          v.

FLUOR HANFORD, INC.,

                    Defendant.

No. CV-08-5029-EFS

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

     A hearing was held in the above-captioned matter on Friday, December 4, 2009. Plaintiff Duane Hall was present, represented by Mel Crawford and David Whedbee; Michael Sanders appeared on behalf of Defendant Fluor Hanford, Inc. (Fluor). Before the Court was Defendant's Motion for Summary Judgment (Ct. Rec. 102), seeking dismissal of Mr. Hall's federal and state discrimination claims. After reviewing the submitted material and relevant authority and hearing from counsel, the Court is fully informed. For the reasons given below, the Court denies Fluor's motion.

///

///

///

ORDER - 1

**A.    Background**[1]

This is an unusual disability discrimination lawsuit because Mr. Hall's work restrictions resulting from his gluteal psoriasis did not significantly change.    Notwithstanding the absence of a significant change to these restrictions, Fluor determined for approximately one-and-a-half years that Mr. Hall was unable to work as a Nuclear Chemical Operator (NCO).

Mr. Hall worked as an NCO at Hanford, a Department of Energy environmental restoration and waste management site.    In January 2006, Mr. Hall transferred to the T-Plant facility and began working for manager Steve Metzger.    In late June 2006, Mr. Hall advised Mr. Metzger that his gluteal psoriasis flared-up when he perspired heavily during nuclear decontamination repackaging certification work while wearing multiple layers of anti-contamination (anti-c) clothing and that as a result he was having difficulty sleeping and performing his NCO duties.

---

[1]

In ruling on this motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, depositions, and Joint Statement of Uncontroverted Facts (Ct. Rec. 147) in the light most favorable to Plaintiff. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).    This standard was used to create the Background section.

ORDER - 2

Mr. Metzger arranged for Mr. Hall to be medically evaluated by AdvanceMed Hanford (AMH). Based on its medical evaluation, AMH cleared Mr. Hall to return to work with two restrictions: 1) "no work where skin contamination (rad/chem) likely to occur to gluteal area," and 2) "no work in increased temperatures (above 72 degrees) when required to wear multiple layers of anti-c clothing."

On June 28, 2006, Mr. Metzger relayed these work restrictions to Cherie Smith, the Fluor Human Resources and Industrial Relations ("Fluor HR") representative initially assigned to Mr. Hall's case, and advised her that because Mr. Hall's T-Plant NCO position included activities in radiation areas Mr. Hall was unable to return. On July 10, 2006, Mr. Hall met with Ms. Smith and Mr. Metzger and advised them that he wanted to continue working as an NCO. On July 12, 2006, Ms. Smith asked AMH to perform a work suitability evaluation (WSE). Before she received the WSE from AMH, Ms. Smith e-mailed Betty White, a Fluor HR staffer, to determine if Fluor had a position available for an NCO who is unable to "go into zones." Ms. White responded that there were no regular openings for NCOs at that time.

On August 1, 2006, AMH's Dr. Mills conducted a WSE. Based on this examination, Dr. Mills determined that the two prior restrictions were permanently appropriate. On August 2, 2006, Ms. Smith received Dr. Mills' WSE assessment, which stated that Mr. Hall could perform the essential functions of his job so long as there was: 1) "no work where there is potential for radiological or chemical contamination to the

ORDER - 3

gluteal area," and 2) "no work in increased temperatures (above 72 degrees) when required to wear multiple layers of anti-c clothing."[2] Because of these two work restrictions, Mr. Metzger prohibited Mr. Hall from returning to work as a T-Plant NCO either on August 2 or 3, 2006, and suggested that he apply for short-term disability.[3]

On August 3, 2006, Mr. Hall called Ms. White, inquiring about NCO openings in non-T-Plant facilities.  Ms. White informed Mr. Hall there were no NCO openings.  Based on his and coworkers' prior NCO experiences at various Hanford facilities, Mr. Hall relayed that there are NCO positions, which did not require zone work; Ms. White advised she would share this information with Ms. Smith.

In mid-August 2006, Ms. Smith inquired whether there were NCO openings at three Hanford facilities: 1) the Waste Receiving and Processing (WRAP) facility, 2) the Liquid Processing and Container Storage facility, and 3) the Solid Waste Storage and Disposal facility, for an individual restricted from working in an area with temperatures exceeding 72 degrees with potential for radiological or chemical contamination.  Ms. Smith learned that there were no such NCO positions

---

[2] Ms. Smith had no further contact with health care providers for Mr. Hall in 2006.

[3] During the approximate one-and-a-half years that Fluor did not allow Mr. Hall to work as an NCO, Mr. Hall was on short-term and then long-term disability.

ORDER - 4

in the facility; however, in her inquiries, she did not limit the contamination restriction to the gluteal area and did not limit the temperature restriction to one which required wearing multiple layers of anti-c clothing.

On August 23, 2006, Ms. White e-mailed Fluor directors and managers in three other facilities:  1) the K-Basin, 2) the Deactivation and Decommissioning (D&D), and 3) Groundwater Remediation, asking whether "there are NCO positions that would allow an NCO who could not work in an area where there is potential for radiological or chemical contamination . . . in increased temperatures (above 72 degrees)." Both D&D and Groundwater Remediation responded "no."  K-Basin did not respond to Ms. White's August 23, 2006 e-mail.

Also during August 2006, Mr. Hall saw his physician, Dr. Mary Newman, in order to complete his short-term disability application. Without becoming familiar with Mr. Hall's job responsibilities, Dr. Newman certified that, in order to treat and stabilize Mr. Hall's psoriasis, he was unable to perform his job responsibilities for approximately one year.  Mr. Hall provided Dr. Newman's physician certification to Fluor Hanford Benefits Department on August 16, 2006—neither Mr. Metzger nor Ms. Smith saw this certification or learned of its contents until more than a year later.

In September 2006, Mr. Hall asked AMH's Dr. Mills to revise the restrictions in hopes of returning to work as an NCO.  On September 5, 2006, Dr. Mills maintained the first restriction but revised the second

ORDER - 5

restriction as follows, "No work in conditions (increased temperatures) that cause persistent sweating while wearing multiple layers of anti-c clothing as needed"; the reference to a specific temperature was removed.  Mr. Hall attempted to return to work by bringing a Return to Work Route Slip, signed by an AMH representative to Fluor's HR.  After receiving the revised WSE, Fluor HR contacted T-Plant manager Mr. Metzger, who determined that Mr. Hall still could not work as a T-Plant NCO.  Mr. Hall was sent home.

No further action was taken until September 25, 2006, when Mr. Hall met with Ms. Smith and Frank Blowe, Fluor's Director of Labor Relations and Field Support, per Mr. Hall's September 6, 2006 written request.  At this meeting, Mr. Hall reiterated that he believed he could work as an NCO at a non-T-plant facility.  That day Ms. Smith asked the manager of three Hanford facilities: 1) the Central Waste Complex, 2) the Low Level Burial Grounds, and 3) the Waste Retrieval, as to whether an individual with Mr. Hall's two restrictions could work as an NCO in their facility. Ms. Smith was advised that the two restrictions could not be accommodated.

On October 13, 2006, Dr. Mills initiated a meeting with Ms. Smith and Mr. Blowe.  Fluor again determined it was unable to accommodate Mr. Hall at his T-Plant NCO position, but there was no discussion regarding non-T-plant NCO work.   Fluor did not advise Mr. Hall of this meeting.

After undergoing a physical examination at AMH on January 15, 2007, Mr. Hall provided Fluor HR employee Heather Guillen a copy of his

ORDER - 6

evaluation, which continued the two previously-imposed restrictions. Ms. Guillen recontacted Mr. Metzger to determine whether Mr. Hall could be accommodated at the T-Plant; Mr. Metzger responded no.  Mr. Hall was told that he could not return to work.

On January 31, 2007, Mr. Hall filed a complaint with the Washington Human Rights Commission (WHRC), alleging that Fluor regarded him as disabled.[4]  Then, in February 2007, Fluor HR employee Lois Kauer contacted Mr. Hall and shared that she believed he would be able to be employed as an Operations Specialist (OS).  Mr. Hall did not pursue this idea because the OS position is an exempt position and OSs work in the same environments as NCOs and, thus, if he was able to work as an OS with his restrictions, he was able to work as an NCO.

Fluor next contacted Mr. Hall in May 2007 when a HR employee left a telephone message.  No other contact occurred until November 9, 2007, when Fluor HR employee Christine DeVere responded to a physician's note faxed by Mr. Hall.  Ms. DeVere called Mr. Hall and advised that before returning to work, Mr. Hall needed to obtain a written release from a health care provider.  A WSE was scheduled and conducted by AMH on

---

[4]  The WHRC conducted an investigation and was concerned with Fluor's failure to reasonably accommodate Mr. Hall.  On December 19, 2007, Mr. Hall asked the WHRC to withdraw his complaint because he was hiring an attorney and filing a lawsuit; Mr. Hall also relayed this information to Fluor.

ORDER - 7

1  December 4, 2007. The same work restrictions were imposed; these
2  restrictions were shared with Fluor HR. On December 17, 2007, Ms.
3  DeVere asked a Fluor HR staffer to search for job positions that Mr.
4  Hall could perform with these restrictions. On December 20, 2007, Fluor
5  HR generated a list of nine exempt job openings—mostly OS positions; Mr.
6  Hall's resume was shared with the managers of these facilities.

7       During a January 22, 2008 telephone conversation with Ms. DeVere,
8  Mr. Hall mentioned an NCO opening at the Canister Storage Building (CSB)
9  facility, which he believed he was able to perform with his two
10 restrictions. Ms. DeVere talked with the CSB facility manager,[5] who
11 believed that Mr. Hall's two restrictions could be accommodated. A
12 facility work site visit, which AMH's Dr. Melder participated in, was
13 conducted. Dr. Melder determined the CSB NCO position would accommodate
14 Mr. Hall's restrictions because he would not have to wear multiple
15 layers of anti-c clothing or be exposed to significant radiological or
16 chemical contamination. On February 7, 2008, Mr. Hall was offered the
17 CSB NCO position, which he accepted. Mr. Hall continues to work as a
18 CSB NCO.

19      Mr. Hall filed this lawsuit in May 2008, alleging violations of
20 federal and state anti-discrimination statutes by Fluor during the time-

21

22  [5]  Ms. DeVere also contacted the WRAP facility manager to determine
23  if there were any openings that could accommodate Mr. Hall's two
24  restrictions.
25

26

ORDER - 8

period it did not allow him to work.  (Ct. Rec. 1.)

**B.    Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the non-moving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Id.* at 322.  "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts.  In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions

ORDER - 9

made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**C.   Authority and Analysis**

    1.   <u>American with Disabilities Act (ADA)</u>

    Fluor contends that Mr. Hall's ADA claim fails at summary judgment because 1) Mr. Hall presented insufficient evidence to create a triable issue of fact as to whether a) Fluor regarded him as unable to perform a class or broad range of jobs and b) he could perform the essential functions of a T-Plant NCO, and 2) Mr. Hall was not entitled to accommodation for a "regarded as" disability.  Mr. Hall acknowledges that the Ninth Circuit has ruled that an employer need not accommodate a "regarded as" disabled employee, *see Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1232-33 (9th Cir. 2003); however, Mr. Hall opposes summary judgment because triable issues of fact exist as to whether Fluor regarded his gluteal psoriasis as substantially limiting his ability to work.

    The American with Disabilities Act (ADA) provides, in relevant part:

> [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

ORDER - 10

42 U.S.C. § 12112(a) (2000).[6]  In order to establish a violation of the ADA, the plaintiff must establish that he was a qualified individual with a disability.  *Id.; see Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477-78 (1999).  This requires, first, establishing a disability and then, second, the ability to perform the essential functions of the position with or without reasonable accommodation.  *Hutton v. Elf Atochem N. Am.*, 273 F.3d 884, 891 (9th Cir. 2001); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1004, 1112 (9th Cir. 2000).  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  If the employer carries its burden, the plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but a pretext for discrimination.  *Id.; see Tex. Dep't of Comm'y Affairs v. Burdine*, 405 U.S. 248, 252-53 (1981).

A disability is defined as 1) a physical or mental impairment that substantially limits one or more of the individual's major life activities, 2) a record of such an impairment, or 3) being regarded as having such an impairment.  42 U.S.C. § 12102(2).  Here, only the last subsection is at issue:  Mr. Hall claims that Fluor regarded him as disabled.  EEOC regulations define when an individual is "regarded as" disabled.  29 C.F.R. § 1630.2(l).  The Supreme Court in *Sutton v. United*

---

[6]  The Court previously ruled that Mr. Hall's ADA claims are governed by the ADA of 1990, not the ADA Amendments Act of 2008.  (Ct. Rec. 88.)

ORDER - 11

*Air Lines, Inc.*, 527 U.S. 471 (1999), assumed that the EEOC regulations were valid and held that an employee may be "regarded as" disabled in one of two ways:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or
> (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

527 U.S. at 489. Each of these scenarios requires "a covered entity [to] entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* To make this assessment, a court looks at the "state of mind of the employer against whom" a claim is made. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2000); *see also Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1006 (9th Cir. 2007). The determination of the employer's motive "'is one rarely susceptible to resolution at the summary judgment stage.'" *Ross*, 237 F.3d at 706 (internal citation omitted).

Here, Mr. Hall claims the second "regarded as" scenario applies, i.e., Fluor mistakenly believed that his gluteal psoriasis (an actual, non-limiting physical impairment) substantially impaired his major life activity of working. There is no dispute that Mr. Hall's psoriasis is a physical impairment. *See* 29 C.F.R. § 1630.2(h)(1). There is also no dispute that working is a major life activity. *See Broussard v. Univ. of Cal., at Berkeley*, 192 F.3d 1252, 1256 (9th Cir. 1999) (citing 29 C.F.R. 1430.2(i) (1999)). Rather, the focus is on whether Mr. Hall

ORDER - 12

presented sufficient evidence to create a triable issue as to whether Fluor believed his psoriasis substantially limited his ability to work.

A person is "substantially limited" in the major life activity of working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I); see *Walton*, 492 F.3d at 1009 (recognizing that a person who is considered unable to do only a single, particular position is not substantially limited). To prove this, the plaintiff "must present specific evidence about relevant labor markets to defeat summary judgment" and "identify what requirements posed by the class of . . . jobs . . . were problematic in light of the limitations imposed on him." *Thorton v. McClatchy Newspapers, Inc.*, 261 F.3d at 789, 795-96 (9th Cir. 2001) (citation omitted) (ellipses in original); see *Walton*, 492 F.3d at 1009 (holding that employee failed to present evidence regarding relevant labor markets pertaining to the employee's job skills). The court can also consider the number and types of jobs utilizing training, knowledge, and skills both similar to and dissimilar to that which the individual was disqualified from because of the impairment within a reasonable geographical area. *Broussard*, 192 F.3d at 1256 (citing 29 C.F.R. 1630.2(j)(3)(ii)). The interpretive guidance further states that the factors listed in 29 C.F.R. § 1630.2(j)(3)(ii) are not intended to require an "onerous evidentiary showing." *Id.*

As the Sixth Circuit recognized,

> Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost

ORDER - 13

entirely in the employer's subjective state of mind.  Thus, proving the case becomes extraordinarily difficult.  Not only must a plaintiff demonstrate than an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs.  As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult.  Yet the drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as being unable to work have a cause of action under the statute.

*Ross*, 237 F.3d at 709.

Here, Mr. Hall presented evidence establishing that for approximately one-and-a-half years Fluor did very little to understand the restrictions posed by his gluteal psoriasis.  Although T-Plant manager Mr. Metzger promptly reported the issue to Fluor HR, Plaintiff's evidence creates a triable issue of fact as to whether Fluor believed Mr. Hall was substantially limited in a class of jobs.  First, a class of jobs is involved.  Mr. Hall presented evidence establishing that there were over 600 NCO positions in different facilities across the Hanford site during the relevant time period and there were many NCO openings.  The NCO responsibilities and the environments in which they work vary for each of these facilities.  Stated simply, the NCO position is not a single, particular position, but rather is a class of jobs.

Second, there is sufficient evidence to create a triable issue of fact as to whether Fluor mistakenly believed that Mr. Hall was significantly restricted in the ability to perform as an NCO as compared to the average person having comparable training, skills and abilities.  In the initial communications to only a handful of the many Hanford facilities, Fluor HR erroneously expanded Mr. Hall's restrictions by not

ORDER - 14

limiting the contamination exposure risk to his gluteal area. This miscommunication continued even after Mr. Hall met with Fluor HR in September 2006 per his request in an attempt to educate Fluor as to his true limitations. Again, when Mr. Hall turned down the suggestion that he apply for OS positions, Mr. Hall relayed that he would not pursue OS positions because if he could work as an OS, he could work as an NCO. Because the evidence shows that Fluor failed to accurately relay Mr. Hall's restrictions and did not regularly communicate with all the Hanford facilities with NCO positions to determine the availability of an NCO position for Mr. Hall, the Court finds Mr. Hall presented sufficient indirect evidence to create a triable issue as to whether Fluor mistakenly believed Mr. Hall's gluteal psoriasis significantly restricted his ability to perform a class of jobs as compared to the average person having comparable training, skills, and abilities. *Cf. Murphy v. United Parcel Serv.*, 527 U.S. 516, 524 (1999) (holding that employer did not regard plaintiff as unable to perform a class of jobs).

The Court also finds that Mr. Hall submitted sufficient evidence to establish that, notwithstanding his gluteal psoriasis, Mr. Hall was qualified to work as an NCO. Again, the numerous NCO job postings establish that an NCO is not a single, particular position, but rather a class of jobs. The simple fact that Mr. Hall is now employed as an NCO establishes that he could perform NCO essential functions with a reasonable accommodation, i.e., transfer. The Court recognizes that the Ninth Circuit has ruled that a "regarded as" disabled individual is not entitled to accommodation, *see Kaplan*, 323 F.3d at 1232-33; however, this ruling did not remove from the ADA disability analysis the question

ORDER - 15

of whether the claimed disabled individual is able to perform the essential functions with or without reasonable accommodation.  The Court concludes that a triable issue of fact exists as to whether Mr. Hall could perform the essential NCO functions with or without an accommodation.

In summary, the Court finds triable issues of fact exist as to whether Fluor regarded Mr. Hall as disabled and whether it took an adverse employment action by not allowing him to return to work for approximately one-and-a-half years.  Mr. Hall's receipt of disability benefits does not negate an adverse employment action.  Furthermore, the Court finds that Mr. Hall presented sufficient evidence to rebut Fluor's proffered rationale for not returning him to work–his failure to submit a return-to-work letter prior to November 2007.  There is no evidence that Fluor HR or facility managers were aware of Dr. Newman's one-year certification.  Further, Fluor's misunderstanding and miscommunications regarding Mr. Hall's restrictions began prior to Dr. Newman's certification.  In addition, Fluor never engaged in a thorough inquiry with all site managers.  For these reasons, the Court determines that Mr. Hall's ADA adverse employment claim survives summary judgment.

     2.   <u>Washington Law Against Discrimination (WLAD)</u>

Analysis of Mr. Hall's WLAD[7] failure-to-accommodate discrimination

---

[7]  The WLAD prohibits an employee from "discriminat[ing] against any person in compensation or in other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability."  RCW 49.60.180(3).

ORDER - 16

claim is complicated by the application of two different disability standards. The Court previously ruled that 1) discrete discriminatory acts occurring between July 6, 2006, and July 22, 2007, are governed by *McClarty v. Totem Electric*, 157 Wn. 2d 214 (2006), which defined "disability" for purposes of the WLAD consistent with the ADA, and 2) discrete discriminatory acts outside of the *McClarty* time-period are defined under RCW 49.60.040(7).[8]   Although there are two different disability definitions applied to Mr. Hall's failure-to-accommodate claim, the Court finds that this state law claim survives summary judgment.

To establish a WLAD failure-to-accommodate claim, Mr. Hall must show 1) that he has a disability, 2) he can perform the essential functions of the job, with or without reasonable accommodation, and 3) he was not reasonably accommodated. *See Ferguson v. Wal-mart Stores, inc.*, 115 F. Supp. 2d 1057, 1068 (E.D. Wash. 2000). The Court finds Mr. Hall presented sufficient disability evidence. First, consistent with the Court's ruling above, the Court finds Mr. Hall presented sufficient evidence to create a triable issue of fact as to whether Fluor "regarded" him as disabled for the alleged *McClarty* time-period discriminatory acts. Second, Mr. Hall presented evidence of a physical impairment that is medically cognizable or diagnosable or, at the least,

---

[8]  RCW 49.60.040(7)(a) defines "disability" as "the presence of a sensory, mental, or physical impairment that: (i) [i]s medically cognizable or diagnosable; or (ii) [e]xists as a record or history; or (iii) [i]s perceived to exist whether or not it exists in fact."

ORDER - 17

that Fluor "perceived" him to have a "physical impairment" that substantially limited his ability to perform NCO functions.   RCW 49.60.040. Also, as the Court found above, Plaintiff presented sufficient evidence to show that he could perform NCO functions with reasonable accommodation.

Lastly, although the Ninth Circuit ruled that a "regarded as" individual is not entitled to reasonable accommodation, the Court concludes this ruling does not apply to Mr. Hall's WLAD failure to accommodate claim.   The Court reaches this ruling because the WLAD affords "protections that are wholly independent of those afforded by the federal Americans with Disabilities Act of 1990," *Hale v. Wellpinit School Dist. No. 49*, 165 Wn. 2d 494, 501-02 (2009).   A liberal construction of the WLAD results in a conclusion that the WLAD requires an employer to reasonably accommodate an individual it perceived to be disabled.   *See Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34 (2006) (ruling that *Kaplan*'s reasoning should not be applied to similarly limit California state discrimination laws); *see also Williams v. Philadelphia Housing Auth. Police Dep't*, 380 F.3d 751, 773-777 (2004) (disagreeing with *Kaplan*'s reasoning and ruling that the ADA requires an employer to reasonably accommodate an individual it regards as disabled).

In light of this legal ruling, the Court finds triable issues of fact exist as to whether Fluor failed to reasonably accommodate Mr. Hall's gluteal psoriasis.   Although there are more than 600 NCO positions at the Hanford site, Fluor did not present Mr. Hall with a single NCO position that would accommodate his two restrictions.

ORDER - 18

Rather, it was Mr. Hall himself who asked Fluor HR to research whether he could perform the CSB NCO position in January 2008, approximately one-and-a-half years after he was first told that he could not work as a T-Plant NCO due to the two work restrictions.

*Ferguson v. Wal-mart Stores, Inc.*, 114 F. Supp. 2d 1057 (E.D. Wash. 2000), is distinguishable.  In *Ferguson*, the employee was attempting to return to work following a medical leave of absence which prevented her from carrying out the essential functions of her job; this Court ruled that the employer's duty to reasonably accommodate was triggered when the employee provided her medical release stating that she was able to perform the essential functions of her job with reasonable accommodation.  Here, the initial AMH WSE assessment reported that Mr. Hall could return to work, albeit with two restrictions.  This assessment and associated restrictions never significantly changed.  Further, no Fluor HR representative or facility manager read Dr. Newman's one-year "disability" certification.  For these reasons, *Ferguson* is distinguished.  A question for trial exists as to whether Fluor failed to accommodate Mr. Hall as required by the WLAD.

**D.   Conclusion**

For the reasons given above, **IT IS HEREBY ORDERED**:  Defendant's Motion for Summary Judgment **(Ct. Rec. 102)** is **DENIED**.


**IT IS SO ORDERED.**  The District Court Executive is hereby directed

1    to enter this Order and furnish copies to counsel.

2        **DATED** this ___11th___ day of January 2010.

3

4                        _____s/Edward F. Shea_____
                              EDWARD F. SHEA
5                    UNITED STATES DISTRICT JUDGE

6    Q:\Civil\2008\5029.deny.msj.frm

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER – 20